**Litwack v. Dreamline**

C.P. of Chester County, No. 2012-01333

*Janice E. Falini*, for plaintiff.

*George Eager*, for defendants, Dreamline, Dreamline Design Build, Dreamline Services, Dreamline Services, LLC, Joe Norley, Jane Norley.

*Anita Fulwiler O'Meara*, for defendants, Mark Litwack and Sheryl Litwack.

TUNNELL, *J.*, Feb. 6, 2015—

ORDER

And now, this 6th day of February, 2015, upon consideration of the motion of defendants, Mark and Sheryl Litwack, for summary judgment on Count III (negligent supervision) of the complaint of plaintiff, Centaur Construction Company, and the response thereto, it is hereby ordered that the motion is granted.[1]

---

1. The relevant facts giving rise to these actions are summarized as follows. On September 17, 2010, the Litwacks entered into a standard form agreement (the "agreement") with defendants Jane and Joe Norley, the Dreamline defendants (as construction managers) and Centaur (as contractor) for the remodeling of the Litwacks' residence. The contract amount was $100,060, plus a $17,000 roof allowance. (*See* mem. in support of mot. summ. judgment, at Ex. A.). Although the contract provided for construction start and end dates of September 20, 2010 and December 5, 2010, Lee Smith, principal of Centaur, described the project as "design as you go." (*See id.* at Ex. C.) The work remained incomplete in September, 2011 when the Litwacks received notice of a potential lien from one of the suppliers because of nonpayment. (*See id.* at Ex. A.) According to Centaur, Norley and the Dreamline defendants failed to pay monies designated by the Litwacks for payment to it for completed work and instead they used the monies for their own personal benefit.

As a result, the Litwacks filed a complaint against defendants Jane and Joe Norley, Centaur and its principal, Lee Smith, for breach of contract, unjust enrichment, violation of the Home Improvement Consumer Protection Act and violation of the Unfair Trade Practices and Consumer

Protection Law (Civil Action No. 2012-01333). Thereafter, Centaur filed its own complaint (Civil Action No. 2013-03901) wherein it asserted claims against the Norley and Dreamline defendants for misappropriation of funds/conversion and a claim for "negligent supervision" against the Litwacks related to the above transactions.

By order of this court dated May 22, 2013, the above captioned actions were consolidated for purposes of discovery and pre-trial motions.

On October 15, 2014, Mark and Sheryl Litwack, defendants in Civil Action No. 2013-03901 (hereinafter the "Litwacks"), filed the present motion for summary judgment seeking dismissal of Count III (negligent supervision) of the complaint of plaintiff, Centaur Construction Company ("Centaur"). The motion was recorded in *Litwack v. Dreamline, et al.*, Civil Action No. 2012-01333. Centaur responded to the motion for summary judgment on November 14, 2014. The response was recorded in *Centaur Construction Co. v. Litwack, et al.*, Civil Action No. 2013-03901. Neither party filed multiple copies of any of their pleadings with the prothonotary. On December 2, 2014, Centaur filed a praecipe to correct the record with the prothonotary in order to properly reflect the filing of the motion for summary judgment and the response thereto.

The court received and reviewed the motion for summary judgment and the response and concludes that summary judgment on *Count III of Centaur's complaint at Civil Action No. 2013-03901* is appropriate as a matter of law.

In their motion for summary judgment, the Litwacks argue that Centaur's negligent supervision claim must be dismissed as a matter of law because it is barred by the "gist of the action" doctrine and alternatively, the "economic loss doctrine." Centaur argues in response that the claim is not barred because the Litwacks "had a duty to act on and investigate Centaur's concern as to why Jane Norley and Dreamline et al. were not carrying out their duty as the construction manager, a duty that arose outside of the four corners of the contract documents." (Mem. in resp. to mot. summ. judgment, at 3-4.) According to Centaur, the Litwacks "failed to supervise and oversee their construction manager to the detriment of Centaur." (*Id.*) It further contends that because the gist of the action doctrine does not bar the tort claim, the economic loss doctrine does not apply. (*Id.* at § III., C.)

The court finds the negligent supervision claim is not barred by the gist of the action doctrine, but is barred by the economic loss doctrine.

Summary judgment is proper when after the close of the relevant pleadings "there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report" and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1); *Abbott v. Schnader, Harrison, Segal & Lewis, LLP*, 805 A.2d 547 (Pa. Super. 2002)(citations omitted). Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears

the burden of proof ... establishes the entitlement of the moving party to judgment as a matter of law." *Young v. PennDOT*, 560 Pa. 373, 744 A.2d 1276, 1277 (2000). The court will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State Univ. v. County of Centre*, 532 Pa. 142, 615 A.2d 303, 304 (1992).

The "gist of the action" doctrine, recognized by the Supreme Court in *Bash v. Bell Tell Co.*, 411 Pa. Super. 347, 601 A.2d 825 (1992), is designed to maintain the conceptual distinction between breach of contract claims and tort claims. The doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. *Id.* In the recent case of *Bruno v. Erie Insur. Co.*, 2014 WL 7089987 (Pa. Dec. 15, 2014), the Supreme Court addressed head on how the "gist of the action" doctrine "should be employed to ensure that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract." *Bruno*, at *10.

The homeowner plaintiffs in *Bruno* were insureds under a homeowner's policy issued by Erie Insurance Company. *Id.* at *1. During renovations of their home, the Brunos notified Erie that they had discovered mold in their basement. In response, Erie sent an adjuster and engineer to the home to investigate the claim. During their examination at the home, the Brunos claimed that the adjuster and engineer told Mr. Bruno that the mold was harmless and there were no valid health concerns associated with mold. *Id.* at *2. Eventually, the Brunos began to suffer physical problems. Mrs. Bruno later was diagnosed with throat cancer, which her physicians attributed to toxic mold. *Id.*

The Brunos filed a complaint against Erie, its engineer and the prior homeowners. As to Erie, the Brunos asserted that it had engaged in numerous negligent acts and omissions including a failure to recognize the mold problem, misleading the Brunos about the nature of the mold problem and minimizing the dangers of the known mold problem when it knew or should have known otherwise. The trial court sustained Erie's preliminary objections in the nature of a demurrer based upon the gist of the action doctrine. The Superior Court on appeal affirmed the trial court's dismissal of the Bruno's negligence claim against Erie. An interlocutory appeal to the Supreme Court then followed. On appeal, the court was asked to determine whether the gist of the action doctrine barred the negligence claims brought against Erie by its insureds.

After a detailed history of the development of the gist of the action doctrine in this Commonwealth, the Supreme Court set forth what it called the "touchstone standard" for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint: what is the "nature of the duty alleged to have been breached?" The court reasoned as follows:

"If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract —

348

then the claim is to be viewed as one for breach of contract (citations omitted). If however, the facts establish that the claim involves the violation of a broader social duty owed to all individuals, which is imposed by the law of torts and hence, exists regardless of the contract, then it must be regarded as a tort. . .

[A] negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed."

*Id.* at *18-19.

The court concluded that the Bruno's claim against Erie was permissible because it was "predicated on the allegedly negligent actions taken by its agents on behalf of Erie *while* they were performing Erie's contractual obligation to investigate the claim made by the Brunos under their policy . . ." In sum, the court found that it was not alleged that Erie failed to meet its contractual obligations (*i.e.* investigate a claim and pay for any covered damage) but that Erie acted in a negligent manner in the course of fulfilling their contractual obligations through the actions of its agents. *Id.* at *19-20.

Applying these standards to the present case, the court concludes that the negligent supervision claim is one based in tort, not contract, and therefore is not barred by the gist of the action doctrine.

Both parties in their submissions agree that the agreement executed by them does not include any reference to or impose any specific contractual duty upon the Litwacks to "act on and investigate Centaur's concern as to why defendant Jane Norley and defendants Dreamline" were not paying Centaur. As to payment, the agreement states only that "[t] he owner shall pay the construction manager in current funds for the performance of the work. . ." and "the owner shall make progress payments on account of the contract sum to the construction manager as provided in the contract documents as follows . . . ." (Litwack's am. compl., at Ex. B.) Like the *Bruno* plaintiffs, Centaur's claim is not that the Litwacks failed to meet their contractual obligation to pay monies to the construction manager as required. In fact, Centaur acknowledges that such payments were made. Rather, Centaur's claim is that in fulfilling those contractual obligations, the Litwacks acted negligently and failed to supervise its construction manager and ensure that the payments reached Centaur.

Whether or not Centaur at the time of trial could establish a claim for negligent supervision is not before the court. Although both parties in their briefs touch at various times on the necessary elements for a negligent supervision claim, the question presented to the court for determination by the Litwacks was: "is Centaur's negligent supervision claim barred by the gist of the action?" (Mem. in support of mot. summ. judgment, at p. 6.) The court has answered that question "no." Furthermore, the issue is moot given the court's conclusion, as discussed below, that

_____
any such tort claim is barred by the economic loss doctrine.

As for the second question presented to the court in the summary judgment motion, whether Centaur's negligent supervision claim is barred by the economic loss doctrine, the court holds that it is so barred.

The general rule of law is that economic losses may not be recovered in tort (negligence) absent physical injury or property damage. *Aikens v. Baltimore & Ohio R. Co.*, 348 Pa. Super. 17, 501 A.2d 277 (1985). In Paragraph 71 of its complaint, Centaur seeks damages as follows: $13,881.56 for work performed on the Litwack remodel and it lost two commercial properties with lost value to Centaur of $209,842.00. There is no indication of either personal injury to Centaur or property damage. In fact, Centaur's only argument in opposition to this part of the motion was to argue that because the gist of the action doctrine does not bar the tort claim, the economic loss doctrine does not apply. The statement is neither accurate nor sufficient to overcome this barrier to recovery.